Jones, Judge,
delivered the opinion of the court:
Oh December 8, 1930, plaintiff entered into a contract with the defendant to furnish all labor and materials, and to perform all work required for the construction of the New House Office Building in Washington, D. C. The contract price was $5,270,000. Plaintiff let the contract for the plumbing to a subcontractor in whose behalf this suit is brought.
The plaintiff contends that the contracting officer required the use of more brass pipes than the contract called for, that brass piping is more expensive than wrought iron otherwise permitted, and that it is entitled to recover the difference in material and labor costs made necessary by the extra brass equipment. Defendant contends that it required *363 only the amount of brass which was stipulated in the contract. It is conceded that brass is more expensive than wrought iron.
Article 5 of Section XXVIII of the specifications applicable to plumbing provided that except as noted in article 6,
* * * all soil, waste and vent pipes and all interior downspouts and roof drainage piping above the groiind shall be full weight genuine galvanized wrought iron.
The exception provided for in article 6 is as follows:
All cold or hot-water, hot-water circulating and drinking water supply pipes, fire lines; and such roof drainage, and soil, waste and vent piping in the building as is concealed in chases, furred spaces, partitions or other inaccessible spaces, shall be full weight, seamless, grade “A” iron pipe size, red brass pipe with the exception of sizes 1% in. or smaller, which shall be copper tubing as hereinafter specified.
•!»
All nipples used in this contract shall be of the same material and composition as the pipe specified herein-before.
$ $ H* $ $
All fittings on brass pipe lines that are used for waste, vent or drain lines shall be plain cast iron flat banded, recessed fittings same as specified for wrought iron.
Stating the issue simply, the contract provided that plaintiff should use brass soil, vent and waste pipes in all inaccessible places and that wrought iron might be used in places which were accessible. The reason for this distinction is that brass is practically everlasting, while wrought iron will rust out in the course of time. It was evidently intended that in positions where a part of the building or walls must be torn down in order to make replacements brass pipes should be installed. In other places, where changes could be made without injury to the walls or other parts of the building, the less durable wrought iron might be used. Brass was specified for hot and cold water pipes.
There were many pipes in the building, including roof drainage, soil, waste, vent, and other piping usually necessary in the construction of this type of building. Some of *364 the pipes were completely concealed within the partitions. Others were installed in chases and furred 'spaces. Except as noted below, there is no dispute as to these,' as brass was specified.
■ The issue arises out of the soil, vent and waste pipes that were installed within shafts or other inclosures. In the various suites on each floor these shafts had access panels. In some of the suites these panels were 18% by 24% inches. In others the opening was placed behind the medicine cabinets. In the latter cases the opening was 14% by 20% inches.
The plaintiff contends that these panels made the pipes in all these shafts accessible and-that it therefore should have been permitted to install wrought iron instead of brass pipes. The defendant contends that these panels did not make the pipes accessible within the meaning of the contract and the specifications.
In several other parts of the building there were doors of more or less normal size which opened into moderate sized compartments that contained many pipes. These were clearly accessible and plaintiff was permitted to use wrought iron in connection with all such installations.
Plaintiff contends that, since the specifications provided in general terms for wrought iron pipes and that brass was provided for in the exception, the evident intention was that more wrought iron than brass was to be used; but that the requirements of the contracting officer were such that the major portion of the piping fell within the exception rather than within the rule that had. been provided. , There is some degree of plausibility to this contention.
However, it seems to us that the proper 'construction is that two classifications were provided for and that the matter should be determined not upon the amount but upon the classification within which the particular work. fell. The specifications do not show how much of either type of piping was to be furnished. In certain circumstances wrought iron was to be used and under other conditions brass was to be used.
The whole question turns on whether or not the otherwise incased and concealed pipes were made accessible by the panels.
*365 The pipe spaces or shafts extended from floor to floor with a depth in most cases of from 10 to 12 inches, although some of them ranged to a depth of 3 feet with a width in most instances of 3 to 4 feet.
The convincing testimony in the case is to the effect that these pipes, in the sense that the term is used in the contract and the specifications, were not made accessible by the access panels. There were several pipes of different kinds in most of the shafts. One of the primary purposes of the panels was to afford access to the valves by means of which the supply to any room might be cut off without interfering with the supply to other parts of the building.
It would be difficult, expensive, and impracticable to disjoint, remove, and replace the pipes through these panels without tearing out the wall. In many instances it would be impossible to disjoint the pipes, much less remove a section of a pipe without removing a portion of the wall. The joints, Y’s, elbows, and low ceilings make this more difficult. The pipes were numerous, many of the shafts were small, and for these reasons the pipes in some instances were imbedded in the shaft walls. To construe these small panels as making practically the entire piping system accessible would run contrary to the whole purpose of requiring brass pipes.
As the contracting officer has construed the specifications, practically all the wrought iron piping that he permitted to be installed can be removed and replaced when it deteriorates without injury or damage to the building and all pipes that cannot be so removed are of brass. This, we believe, is in accordance with a reasonable construction of the contract.
Under the terms of the contract and specifications the question of whether the pipes were in fact accessible was to be determined by the contracting officer, or his duly authorized representative, subject to appeal by the contractor to the head of the department which, in this instance, was the House Office Building Commission. In this case the contracting officer ruled that the panels did not make the pipes accessible. The Building Commission did not alter his ruling, and we do not think the ruling is either arbitrary or capricious.
*366 The contract required plaintiff to install wrought iron pipes in accessible spaces and brass pipes in inaccessible spaces. The parties are in agreement that an accessible space is one from which piping could be removed and replaced without damage to the surrounding walls or partitions. No other reasonable construction can be made. A portion of the hearings in this case was held in the House Office Building where the conditions could be viewed first-hand. The physical facts as disclosed by the record justify the conclusion that the pipes involved in the controversy were inaccessible within any reasonable interpretation.
It follows that the petition should be dismissed. It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.